NICHOLAS DELSPINA, PLAINTIFF–APPELLANT–CROSS–RE-SPONDENT, v. WOSCHA, INC., ANTHONY J. MINNITI, COUN-CIL PRESIDENT OF TOWNSHIP OF WEST ORANGE, JOSEPH P. BRENNAN, JR., PETER DUNN, TOBY KATZ AND GLENN V. SORGE, AS TOWNSHIP COUNCIL, DEFENDANTS–RESPON-DENTS, AND NEW JERSEY HOUSING & MORTGAGE FI-NANCE AGENCY, UNITED STATES OF AMERICA, DEPART-MENT OF HOUSING AND URBAN DEVELOPMENT, DANIEL WEISS, ALFRED SHARKEY, CAROL COPPOLA, ELEANOR SORGE, NATHANIEL GREEN, ROBERT M. MANGINO AND COUNCILMAN PETER DUNN, DEFENDANTS, AND SAMUEL A. SPINA, MAYOR OF TOWNSHIP OF WEST ORANGE, DE-FENDANT–RESPONDENT–CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 12, 1987—Decided January 19, 1988.

Before Judges BRODY, LONG and SCALERA.

*Michael K. Fielo,* attorney for appellant-cross-respondent.

*Joseph G. Dooley, Jr.,* Township Attorney for Township of West Orange, attorney for Samuel A. Spina, respondent-cross-appellant (*Michael E. Panagos,* on the letter brief).

*Wilentz, Goldman & Spitzer,* attorneys for respondents Anthony J. Minniti, Joseph P. Brennan, Jr., Peter Dunn, Toby Katz and Glenn V. Sorge (*Robert J. Cirafesi,* of counsel and on the brief; *Robert Mahoney,* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Plaintiff commenced this action to declare invalid a resolution of the Council of the Township of West Orange that purports to replace him as a "trustee" of the West Orange Senior Citizens Housing Association (WOSCHA). Defendant Samuel A. Spina, Mayor of West Orange, asserting in a "Sixth Separate Defense" that he alone has the authority to appoint trustees to WOSCHA, sought a declaration of that authority "should the Court determine that appointments are to be made as a result of the within litigation." The trial judge decided in a letter opinion that the Council properly appointed plaintiff's successor. Plaintiff and Spina appeal. We affirm.

The tangled history of this dispute begins in 1970 when the Town (West Orange later became a Township) Council decided that certain land, then owned by the Town, should be used for the construction of moderate income senior citizen housing (the project). The Council wanted the project to be privately operated in order to spare the Town financial, operational and liability responsibilities. At the same time, it wanted to be sure that the project's sponsors and managers would reflect the views of the West Orange electorate.

These objectives were expressed in a resolution the Council adopted in November 1970 that created an "Association" of seven members. The Association was free to undertake the project by organizing "in corporate or non-corporate form as its members hereafter determine." In order to maintain the

project's "community-oriented, broadly-representative" character, the resolution provided that two members of the Association be chosen by the Mayor and five by the Council. Members were to serve for stated terms after which their successors would be appointed in the same manner. The Council amended the resolution in 1976 to provide that the Mayor appoint one member and the Council appoint the other six, one of whom must be a councilman. The 1970 resolution contained the following provision which was "ratified and confirmed" in the 1976 resolution:

> Any articles of incorporation, by-laws, or other documents governing the affairs of the Association shall be consistent with all the provisions contained herein.

By a companion resolution to the 1970 resolution, the Mayor and the Council appointed the Association's first seven members. Shortly thereafter the Association members formed a nonprofit corporation, The West Orange Senior Citizens Housing Association (WOSCHA), under the provisions of *N.J.S.A.* 15:1-1 *et seq.* That statute, superseded in 1983 by *N.J.S.A.* 15A:1-1 *et seq.*, denominated the governing body of a nonprofit corporation the board of trustees. WOSCHA's certificate of incorporation named the original Association members as its Board of Trustees. The trustees promptly applied to the New Jersey Housing Finance Agency (HFA) for financing.

For reasons apparently related in part to HFA financing, the members of the Association abandoned WOSCHA and in 1972 formed another corporation, WOSCHA, Inc., under the Limited–Dividend Nonprofit Housing Corporations or Associations Law, *N.J.S.A.* 55:16-1 *et seq.* That statute denominates the governing body of a limited dividend corporation the Board of Directors. The original members of the Association became WOSCHA, Inc.'s first Board of Directors.[1]

---

[1]Later Council resolutions of appointment erroneously refer to the appointees as "trustees."

■ The present dispute arises out of a conflict between provisions in WOSCHA, Inc.'s certificate of incorporation and provisions in its by-laws, adopted in 1976, regarding the manner of appointment to its Board of Directors. Article V of the certificate provides:

> The corporation shall have between five (5) and nine (9) directors, as fixed by the By–Laws who shall be *elected by the common stockholders*[2] at their regular annual meetings and who shall serve as such until their successors are duly chosen and qualified. The incorporators shall serve as Directors until such time as their successors are elected. [Emphasis added.]

Article Seven of the by-laws provides in part:

> The affairs of the Corporation shall be governed by the Board of Directors consisting of seven (7) persons. One of said Directors shall be appointed by the Mayor of the Town of West Orange and six shall be appointed by the Town Council.

Plaintiff contends that where they conflict, provisions of a certificate of incorporation prevail over provisions of by-laws, and therefore he remains a director because his purported successor was appointed by Council pursuant to the by-laws and not by the common stockholders as required by the certificate.[3]

The trial judge was clearly correct in finding that the intent of the Mayor and Council and the understanding of members of the Association has been that members of the Association would be appointed by the Mayor and Council, and those members would elect themselves to be WOSCHA, Inc.'s Board

---

[2]Under WOSCHA, Inc.'s by-laws its common stockholders are its Board of Directors.

[3]This case has the incidental effect of testing the validity of a resolution adopted by WOSCHA, Inc.'s Board of Directors declaring its autonomy from the Mayor and the Council. The resolution was adopted just before the terms of all members of the Board were to expire. Shortly thereafter the Mayor and Council adopted the resolution plaintiff is challenging, which replaces not only plaintiff but a majority of the Board members. Although we have not been given a copy of the Board's resolution, we assume that it provides for election of members of the Board by WOSCHA, Inc.'s common stockholders. Because the stockholders are also the Board members, the Board's resolution, if effective, would indefinitely perpetuate the Board's present membership.

of Directors. That intent and understanding is expressed in the Council's resolution of 1970, its reaffirming resolution of 1976, WOSCHA, Inc.'s by-laws of 1976, and the practice for 14 years. The only allegedly discordant note is the procedure for electing Board members found in WOSCHA, Inc.'s certificate of incorporation.

The attorney who drew the certificate testified that he placed in the certificate the provision that the Board of Directors be elected by the stockholders because that procedure is mandated by *N.J.S.A.* 14:7–1, and *N.J.S.A.* 55:16–6 requires that a limited dividend housing corporation be formed in the manner of a "Title 14" corporation.

The relevant portion of *N.J.S.A.* 55:16–6 provides:

> Any three or more persons of the State may form a housing corporation ... by making, signing, acknowledging and filing a certificate as required for other corporations formed under Title 14, Corporations, General, of the Revised Statutes....

The reference in *N.J.S.A.* 55:16–6 to Title 14 became anachronistic on January 1, 1969, when Title 14 was superseded by Title 14A, the New Jersey Business Corporation Act, *N.J.S.A.* 14A:1–1 *et seq.* The contents of a certificate of incorporation set forth in *N.J.S.A.* 14A:2–7 do not include a statement of the manner by which directors are chosen. *N.J.S.A.* 14A:2–7(1)(f) permits the certificate to contain:

> Any provision not inconsistent with this act or any other statute of this State, which the incorporators elect to set forth for the management of the business and the conduct of the affairs of the corporation, or creating, defining, limiting or regulating the powers of the corporation, its directors and shareholders or any class of shareholders, including any provision which under this act is required or permitted to be set forth in the by-laws; ...

*N.J.S.A.* 14A:6–3, however, provides that "the shareholders shall elect directors."

It may be argued that a certificate that provides a method for electing directors that differs from the method provided in *N.J.S.A.* 14A:6–3 is "inconsistent with this act" and is therefore prohibited. Title 14A, however, provides considerable flexibility in the governance of a corporation. It permits "such varia-

tions and modifications from the [general corporate] form so provided as the interested parties in any corporation may agree upon, subject only to over-riding interests of this State and of third parties; . . ." *N.J.S.A.* 14A:1–1(3)(b). For instance, *N.J. S.A.* 14A:1–1(4) provides:

> The presence in certain provisions of this act of the words "unless otherwise provided in the certificate of incorporation" or "unless otherwise provided in the certificate of incorporation or by-laws," or words of similar import, does not imply that the effect of other provisions may not be varied by provisions in the certificate of incorporation or by-laws.

Thus the statutory provision that directors be elected by shareholders does not necessarily prohibit a certificate of incorporation from providing otherwise.

We need not decide the question in this case because even though WOSCHA, Inc.'s certificate provides that the shareholders elect directors, shareholders may agree in advance how they will cast their votes. *N.J.S.A.* 14A:5–21(1) provides:

> An agreement between two or more shareholders, if in writing and signed by the parties thereto, may provide that in exercising any voting rights, the shares held by them shall be voted as therein provided, or as they may agree, or as determined in accordance with a procedure agreed upon by them.

Pursuant to that provision, shareholders may agree that they will vote to elect directors named by a class of nonshareholders, such as the Mayor and Council.

When appointees accepted their appointments to the Association, they thereby agreed to the terms of the appointments contained in the Mayor and Council's resolution. Those terms included limited tenure subject to reappointment or replacement in the manner provided by the 1970 Council resolution. Thus although the certificate gave the members of the Association, as shareholders of WOSCHA, Inc., the right to elect the directors, that right is circumscribed by the terms of the resolutions of appointment to which each appointee had bound himself by accepting his appointment. Those terms provided that the Mayor and Council determine who shall be the shareholders and directors.

Plaintiff contends that the Limited–Dividend Nonprofit Housing Corporations or Associations Law prohibits the Mayor and Council from compromising the independence of the directors by retaining the right to replace them. We rejected a similar argument in *Cervase v. Kawaida Towers, Inc.*, 124 *N.J.Super.* 547 (Law and Ch.Div.1973), aff o.b. 129 *N.J.Super.* 124 (App. Div.1974). There the certificate of incorporation of a limited dividend housing corporation prohibited a person from being a member of the board of directors "who is not a member in good standing of the Temple of Kawaida," a religion that recognized a single person, Imamu Baraka, as having ultimate authority. *Id.* at 564. The argument was made that the provision "withheld from the board of directors any semblance of discretion or authority in the direction and control of the corporation, thereby rendering the board 'sterile,' contrary to the General Corporation Law of New Jersey." *Ibid.*

This court held there that Baraka's influence on the board had no significant effect on the corporation's operations because where there is HFA financing, the business of a limited dividend corporation is so regulated by law that the board is left with no independent authority that an outside authority could influence. *Id.* at 566–567. The same is true here.

We also note that under the Business Corporation Act, shareholders, where they all agree, may amend the certificate of incorporation to transfer to any persons "all or any part" of the management of the business of the corporation "otherwise within the authority of the board." *N.J.S.A.* 14A:5–21(2).

■ The Mayor argues that if the authority to appoint members to the Association is to be exercised by municipal officials, then he alone has that authority under *N.J.S.A.* 40:69A–43(f) of the Faulkner Act. The statute provides:

Whenever the governing body is authorized by any provision of general law to appoint the members of any board, authority or commission, such power of appointment shall be deemed to vest in the mayor with the advice and consent of the council, unless the specific terms of that general law clearly require a

different appointment procedure, or appointment by resolution in which case the appointment shall be by council.

As pertinent here, the Faulkner Act defines a "general law" as "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities." *N.J.S.A.* 40:69A-28. The Mayor does not cite any general law enacted by the Legislature that gives him the asserted authority. Because neither the Association nor WOSCHA, Inc. is a statutory municipal board, authority or commission, *N.J.S.A.* 40:69A-43(f) does not apply.

Affirmed.